# United States Court of Appeals
# for the Fifth Circuit

_____

No. 22-10783

_____

United States Court of Appeals
Fifth Circuit

**FILED**
January 19, 2024

Lyle W. Cayce
Clerk

Marcus Traylor,

*Plaintiff—Appellant/Cross-Appellee*,

*versus*

Gideon Yorka,

*Defendant—Appellee/Cross-Appellant*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:21-CV-406

_____

Before Richman, *Chief Judge*, and Haynes and Duncan, *Circuit Judges*.

Per Curiam:[*]

Following an altercation in a Dallas bar, Officer Gideon Yorka struck Marcus Traylor in the face and placed him under arrest. Traylor subsequently brought claims under 42 U.S.C. § 1983 for excessive force, unlawful arrest, and fabrication of evidence. The district court granted qualified immunity to Yorka on the excessive force and unlawful arrest claims

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-10783

but denied qualified immunity on the fabrication-of-evidence claim.  For the reasons set forth below, we AFFIRM in part and REVERSE in part.

## I.     Background

On the evening of February 16, 2020, Marcus Traylor and three of his friends attended Clutch Bar and Restaurant ("Clutch") in Dallas, Texas.[1] That night, Dallas Police Department ("DPD") Officer Gideon Yorka and another DPD officer were working private security at Clutch.  The officers were off duty but wearing their full DPD uniforms.

At the bar, Traylor's group ordered "bottle service," which included one bottle of champagne and two bottles of hard alcohol.  Traylor consumed "two or three glasses" of champagne over the course of an hour.  At some point, Clutch security asked the group to leave because Traylor's friend had fallen asleep.  When Traylor lingered to pay his tab, a Clutch bouncer grabbed him from behind and brought him to the ground.  Yorka was outside during this altercation.  However, Clutch security informed him that there had been a fight inside and sought his assistance.  Yorka and his colleague then entered the bar to break up the commotion, where Yorka observed Traylor with a bloodied mouth being restrained on the floor by Clutch security.  Yorka picked Traylor up by the arm and escorted him out of the bar.  During this encounter, Yorka detected the smell of alcohol on Traylor's breath.

The parties' versions of the events outside of the bar vary significantly.  According to Traylor, he cooperated as Yorka escorted him past a crowd outside of the bar and shoved him into the street.  Yorka

---

[1] Because this is an appeal from a summary judgment order, we discuss the following facts in the light most favorable to the nonmovant, Traylor.  *See Deville v. Marcantel*, 567 F.3d 156, 163–64 (5th Cir. 2009) (per curiam).  However, we note factual discrepancies where relevant.

instructed Traylor to leave, but Traylor told Yorka that his wallet and belongings were still inside Clutch. Yorka, however, remained adamant that Traylor leave immediately. Traylor then walked towards the curb to find assistance from a security guard or another person to help get his wallet. As Traylor approached the curb, Yorka struck him in the face, causing him to fall to the ground.

According to Yorka, Traylor was uncooperative as he escorted him outside of the bar. Traylor repeatedly tried to turn around to go back inside, but Yorka was able to regain control and shove Traylor into the street. Once released, Traylor again tried to go back to the bar, saying "this sh** is not over; this motherf***er started it." Yorka again pushed Traylor away towards the street. When Traylor continued to make his way back towards the bar, Yorka pushed him a second time. Traylor then used his forearm to shove Yorka in the chest and neck area, creating separation between the two. When Traylor again approached Yorka, Yorka punched him.

A bystander recorded a portion of the relevant events. The video shows a crowded scene both inside and outside of the bar. The camera then pans to the left and shows Traylor in a white hoodie standing in the street. Yorka is standing a few feet away facing Traylor. Traylor leans forward and walks in Yorka's direction. Yorka then punches Traylor in the face, and Traylor falls to the ground. The interaction lasts only a few seconds before the video cuts to the officers helping Yorka and an ambulance arriving.

The parties agree on the events after Yorka struck Traylor. An ambulance took Traylor to the hospital. Traylor was then arrested and charged with felony assault against a peace officer. The jail supervisor, however, rejected the charge and reduced it to a class C misdemeanor for offensive contact. Officers issued Traylor a citation and released him that night. The misdemeanor was later dismissed.

On February 25, 2021, Traylor filed this suit against Yorka pursuant to 42 U.S.C. § 1983.  Traylor alleges that Yorka (1) used excessive force in violation of the Fourth Amendment, (2) unlawfully arrested him in violation of the Fourth Amendment, and (3) fabricated evidence of assault in violation of Traylor's Fourteenth Amendment substantive due process right.  Upon Yorka's motion for summary judgment, the district court granted qualified immunity to Yorka on the excessive force and unlawful arrest claims.  However, the district court denied qualified immunity on Traylor's fabrication-of-evidence claim.  Both parties timely appealed.

## II.   Jurisdiction and Standard of Review

The district court properly exercised jurisdiction over Traylor's federal law claims pursuant to 28 U.S.C. § 1331.  As to Traylor's excessive force and unlawful arrest claims, we have jurisdiction over the district court's partial final judgment entered pursuant to Federal Rule of Civil Procedure 54(b).  28 U.S.C. § 1291; *see also Briargrove Shopping Ctr. Joint Venture v. Pilgrim Enters.*, 170 F.3d 536, 538–39 (5th Cir. 1999).  As to Traylor's substantive due process claim, we have jurisdiction to immediately review the district court's denial of qualified immunity.  *Jason v. Tanner*, 938 F.3d 191, 194 (5th Cir. 2019).

We review a district court's entry of summary judgment based on qualified immunity de novo.  *Griggs v. Brewer*, 841 F.3d 308, 311 (5th Cir. 2016).  In conducting this review, we must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."  *Deville v. Marcantel*, 567 F.3d 156, 163–64 (5th Cir. 2009) (per curiam).  Summary judgment is proper where there are no genuine issues of material fact, and the movant is entitled to prevail as a matter of law.  *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017) (citing Fed. R. Civ. P. 56(a)).

In qualified immunity cases on interlocutory appeal, we consider only "the scope of clearly established law and the objective reasonableness of the defendant's acts." *Jason,* 938 F.3d at 194 (internal quotation marks and citation omitted). We "can review the *materiality* of any factual disputes, but not their *genuineness*." *Id.* (quotation omitted).[2]

## III.    Discussion

Traylor raises two issues on appeal: (1) whether Yorka was entitled to qualified immunity on the excessive force claim; and (2) whether Yorka was entitled to qualified immunity on the unlawful arrest claim. On cross appeal, Yorka raises an additional issue of whether he was entitled to qualified immunity on the fabrication-of-evidence claim. We address each issue in turn.

### A. Excessive Force

Under 42 U.S.C. § 1983, private citizens may sue public officials for violations of their constitutional rights. However, "[q]ualified immunity shields from liability 'all but the plainly incompetent or those who knowingly violate the law.'" *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). To determine whether qualified immunity bars a § 1983 claim, we ask (1) whether "the official's conduct violated a constitutional right," and (2) "whether the right was clearly established." *Cunningham v. Castloo*, 983 F.3d 185, 190–91 (5th Cir. 2020) (internal quotation marks and citation omitted). Here, Traylor's claim fails at the first inquiry because Yorka's use of force did not violate Traylor's Fourth Amendment right.

---

[2] Because the district court entered final judgment on the excessive force and unlawful arrest claims, these limitations apply only to the fabrication-of-evidence claim.

To prevail on a Fourth Amendment excessive force claim, a plaintiff must show that he "suffer[ed] an injury that result[ed] directly and only from a clearly excessive and objectively unreasonable use of force." *Joseph ex. rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020). The district court did not address whether Traylor suffered an injury, but undisputed evidence shows that he suffered a broken wrist from falling after Yorka's punch. Thus, the only remaining issue is whether Yorka's use of force was "objectively unreasonable." *See Graham v. Connor*, 490 U.S. 386, 397 (1989). We look to several factors for this inquiry, including "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Joseph*, 981 F.3d at 332 (citing *Graham*, 490 U.S. at 396). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Darden v. City of Fort Worth*, 880 F.3d 722, 729 (5th Cir. 2018) (quotation omitted).

Construing all factual disputes in Traylor's favor, Yorka's use of force was not objectively unreasonable. Even under Traylor's version of events, Yorka could have reasonably believed Traylor posed a threat. Clutch security had just informed Yorka that Traylor had been in a fight, and Yorka observed Traylor bloodied on the floor with a strong scent of alcohol. *See Escobar v. Montee*, 895 F.3d 387, 394–95 (5th Cir. 2018) (considering that an officer had been warned plaintiff was a threat). Most importantly, the video shows Traylor moving quickly towards Yorka. Even accepting Traylor's version as true, and therefore interpreting his actions as walking towards a third party to ask about retrieving his wallet, the video still supports Yorka's perception of a threat, which is the key question in such a quick and messy situation. Indeed, Traylor leans forward then walks in Yorka's direction. Given Traylor's insistence on retrieving his wallet and the information Yorka

received about the fight, Yorka could have reasonably interpreted Traylor's steps as a "charge" towards him. Further, the video shows that only a couple of seconds spanned between Traylor's steps towards Yorka and Yorka's strike. The tense environment and need for a split-second decision indicate that Yorka's use of force was not unreasonable. *See Graham*, 490 U.S. at 396–97 ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."). In looking back, it is always easy to think of other things that could have been done differently. Yet, although Yorka's escalation to a strike to the face "may not have been as restrained as we would like to expect from model police conduct . . . qualified immunity 'protect[s] officers from the sometimes hazy border between excessive and acceptable force'" in the moment. *Griggs*, 841 F.3d at 315 (alterations in original) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)).

Traylor argues that the district court erred by determining Yorka acted reasonably based on Yorka's version of events. Traylor claims that, under his version, Yorka would have had no reason to doubt that he was merely attempting to retrieve his wallet. But Traylor disregards that reasonability "must be judged from the perspective of a reasonable officer on the scene." *Darden*, 880 F.3d at 729 (quotation omitted). Although Traylor did submit evidence that his intent was to speak to a third party, he has not produced evidence showing that this intent manifested in any outward action. *See Cloud v. Stone*, 993 F.3d 379, 386 (5th Cir. 2021) ("[W]e measure excessive force by the objective circumstances, not by the subjective intentions of the arrestee."). Even interpreting the video in Traylor's favor, it clearly shows him, at the very least, quickly approaching Yorka. Thus, the

factual dispute of whether Traylor intended to charge at Yorka or speak to a third party is immaterial.

Because of the tense situation and Yorka's need to make a split-second decision, Yorka's use of force did not violate Traylor's Fourth Amendment right. Accordingly, we affirm the district court's dismissal of Traylor's excessive force claim.

## B. Unlawful Arrest

The Fourth Amendment bars unreasonable seizures of both property and people. *California v. Hodari*, 499 U.S. 621, 624 (1991). A seizure is reasonable if it is based on probable cause. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 208 (5th Cir. 2009). Therefore, to defeat qualified immunity on an unlawful arrest claim, a plaintiff must prove (1) probable cause did not exist, and (2) the defendant-official was "objectively unreasonable in believing there was probable cause for the arrest." *Bey v. Prator*, 53 F.4th 854, 858 (5th Cir. 2022) (per curiam) (internal quotation marks and citation omitted), *cert. denied*, 143 S. Ct. 1783 (2023).

Here, the district court found that Yorka had probable cause to arrest Traylor for interference with a police officer's performance of public duties in violation of Texas Penal Code § 38.15. Traylor argues that the district court erred by treating § 38.15 as a strict liability provision because the statute instead requires a showing of criminal negligence. But Traylor provides no authority requiring a showing of criminal negligence for arrest on suspected violation of § 38.15. Indeed, our precedent has not imposed such a requirement. *See, e.g.*, *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 656–57 (5th Cir. 2004) (holding that officer had probable cause for arrest under § 38.15 after plaintiff ignored warnings not to intervene and instead stepped forward towards the officer); *Childers v. Iglesias*, 848 F.3d 412, 415 (5th Cir. 2017)

(affirming probable cause for arrest under § 38.15 where the plaintiff failed to follow an officer's order to move his truck).

Further, uncontested evidence shows that Traylor failed to comply with Yorka's numerous orders to leave. This instruction was made in Yorka's duty to maintain the peace at Clutch, as even an off-duty officer has a duty "to preserve the peace within the officer's jurisdiction." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 466 (5th Cir. 2010) (quoting Tex. Code Crim. Proc. art. 2.13(a)). Thus, Yorka had probable cause to arrest Traylor for interfering with the performance of his public duties. *See Buehler v. Dear*, 27 F.4th 969, 992 (5th Cir. 2022) ("[R]efusing to obey police officers' repeated and unambiguous warnings to step back so as not to interfere with officers' official duties . . . establishes probable cause to arrest for a violation of Texas Penal Code § 38.15(a)(1)."). Accordingly, we affirm the district court's dismissal of Traylor's unlawful arrest claim.

## C. Fabrication of Evidence

In *Cole v. Carson*, we recognized a substantive due process right "not to have police deliberately fabricate evidence and use it to frame and bring false charges against a person." 802 F.3d 752, 771 (5th Cir. 2015).[3] Here, Traylor claims that Yorka fabricated evidence of assault by making a false statement that Traylor pushed him. The district court denied qualified

---

[3] *Cole* has a complex procedural history. The Supreme Court vacated *Cole* and remanded for reconsideration in light of its holding in *Mullenix v. Luna*, 577 U.S. 7 (2015) (per curiam). *Hunter v. Cole*, 580 U.S. 994, 994 (2016) (mem.). On remand, we reinstated the *Cole* opinion regarding the due process fabrication-of-evidence claim because *Mullenix* did not concern that issue. *See Cole v. Carson*, 905 F.3d 334, 347 (5th Cir. 2018) ("*Cole II*"). *Cole II* was subsequently vacated when we granted rehearing en banc. *Cole v. Carson*, 915 F.3d 378 (5th Cir. 2019). However, the en banc court held that *Cole's* fabrication-of-evidence claim remained viable. *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019), *as revised* (Aug. 21, 2019).

immunity because it concluded this case is similar to *Cole* and Traylor raised a fact issue as to whether Yorka's statement was fabricated.  However, as discussed above, Traylor must establish both a violation of his constitutional right and that this right was clearly established.  *See Cunningham*, 983 F.3d at 190–91.  We may limit our analysis to the "clearly established" prong if it resolves the qualified immunity issue.  *See Pearson v. Callahan*, 555 U.S. 223, 236–37 (2009).  Because *Cole* did not clearly establish Traylor's right as relevant here, we conclude that Yorka is entitled to qualified immunity.

A § 1983 plaintiff bears a heavy burden of establishing that an officer violated clearly established law.  *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019).  "A right is clearly established only if relevant precedent 'ha[s] placed the . . . constitutional question beyond debate.'"  *Id.* (alterations in original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)); *see also Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) ("A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." (internal quotation marks and citation omitted)).  Traylor relies solely on *Cole*, in which we established a Fourteenth Amendment substantive due process claim for fabrication of evidence.  But we may not define clearly established law with such a high level of generality.  *See al-Kidd*, 563 U.S. at 742.  Instead, "[t]he dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'"  *Mullenix*, 577 U.S. at 12 (quoting *al-Kidd*, 563 U.S. at 742).  Thus, *Cole* can establish Traylor's right only if the facts there "squarely govern[]" the specific facts at issue here.  *See Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam) (quotation omitted).  We conclude that they do not.

In *Cole*, three officers pursued the plaintiff and subsequently opened fire.  802 F.3d at 755–56.  After the shooting, the officers had time to confer before giving their statements, and they ultimately claimed that the plaintiff

was given a prior warning and pointed his gun towards one of the officers. *Id.* at 756. Indeed, *Cole* involved allegations of a conspiracy and the calculated fabrication of evidence to justify a shooting.[4] *See id.* This false evidence led to a felony charge for aggravated assault on a public servant, which in turn caused significant reputational injuries and legal expenses.[5] *Id.* at 756, 766.

The facts of *Cole* are distinguishable from those presented here. This case involves a quick and chaotic incident in which the parties have different versions of events. Traylor has not shown that Yorka had the time or deliberation to fabricate evidence of assault. Further, Traylor did not face the extreme consequences as those of the plaintiff in *Cole*. Indeed, Traylor's charge was reduced to a misdemeanor the same night of the incident. Given this significant divergence of facts, *Cole* did not clearly establish that "every reasonable official" in Yorka's position would have understood that his conduct violated Traylor's Fourteenth Amendment right. *See Mullenix*, 577 U.S. at 11 (quotation omitted). Yorka is thus entitled to qualified immunity on Traylor's fabrication-of-evidence claim.

## IV.    Conclusion

For the reasons set forth above, we AFFIRM the district court's order granting qualified immunity to Yorka on the excessive force and unlawful arrest claims. However, we REVERSE the district court's order as to the fabrication-of-evidence claim and REMAND for entry of summary judgement in favor of Yorka.

---

[4] Unlike this case, we addressed the fabrication-of-evidence claim in *Cole* at the motion-to-dismiss stage. 802 F.3d at 755.

[5] The charge was dismissed several months after the incident, and after the plaintiff incurred substantial legal fees to confront the charge. *Cole*, 802 F.3d at 755.